**158 So. 618**

## VIDRINE et al. v. DESHOTELS et al.

### No. 33123.

Jan. 7, 1935.

Guillory & Guillory, of Ville Platte, for appellants.

Dubuisson & Dubuisson, of Opelousas, for appellee Opelousas-St. Landry Securities Co., Inc., warrantor.

ODOM, Justice.

Arsene Fruge purchased the S. ½ of the S. E. ¼ of section 39, township 4 south, range 1 west, on December 12, 1925. He died on May 14, 1926. His wife and six minor children, issue of the marriage, survived him. They brought the present suit, which is a petitory action, against the defendants on May 7, 1934, alleging that they are the owners of said property and that defendants are in possession thereof without any right or title and that they refuse to deliver possession and are unlawfully appropriating the revenues of said property. They prayed for judgment recognizing them as owners of the property and as such entitled to possession.

Defendants in answer denied that plaintiffs are the owners of the property and set up title in themselves. From a judgment rejecting plaintiffs' demands, they appealed.

Mrs. Vidrine Fruge, one of the plaintiffs, is the widow of Arsene Fruge and claims an undivided one-half interest in the property. The other plaintiffs are the sole heirs of their father, Arsene Fruge. No sale of this land has ever been made by these plaintiffs individually; and if their title has not been divested by succession sale, they own it now.

The defendants allege that the property was sold by the succession of Arsene Fruge on December 11, 1926, to the Opelousas-St. Landry Securities Company, and by that

company sold to O. L. Fuselier, reacquired by that company from Fuselier by foreclosure, and finally sold to them by the said company under full warranty of title on December 14, 1929, and that they have had undisturbed possession thereof ever since.

It is conceded that the succession of Arsene Fruge was insolvent and that one of his sons, Adio Fruge, was appointed and qualified as administrator thereof. But no record of the said appointment and no record of any proceeding which he took in connection with the succession or of the sale of the property thereof can be found at present. Both the clerk of court and the attorney who represented the administrator testified that they had searched in vain for the record in said succession.

But defendants offered and filed in evidence a procès verbal of sale, not only of the property here involved, but of all other property which belonged to the succession, which procès verbal is signed by Adio Fruge, administrator. This procès verbal of the sale was not made out and signed until March 19, 1934, more than seven years after the sale is alleged to have taken place. Whether there was a procès verbal made out and signed by the administrator immediately following the date on which the sale is alleged to have taken place is not shown by the record. But if there was, there is at present no record of it, and when this fact was discovered by attorneys employed by the defendants to abstract and pass upon the title of the land, the procès verbal above referred to was prepared; presented to the administrator, and signed by him in the presence of two witnesses. Adio Fruge, who was the adminis-

trator, and who is one of the plaintiffs, admitted while on the stand as a witness that he signed the said document after the same was read to him in full by Mr. Dore, the attorney who prepared it. But he says that the document, as he understood it, was to evidence a conveyance of all the property belonging to the succession except that which is involved in this suit. He and the other plaintiffs do not deny that there was in fact a public sale of the property belonging to the succession, conducted by the administrator. But their contention is that the particular property here involved was never sold.

That plaintiffs are in error on this particular point is proved beyond question. That it was sold at public auction by the administrator is made clear by the testimony of three witnesses who were present at the sale and by circumstances which are convincing. Mr. J. Hugo Dore, who was attorney for the administrator, testified that he personally auctioned the property in the presence of the administrator, that it was sold to the highest bidder and purchased by Mr. Leon Dupre for the Opelousas-St. Landry Securities Company. Mr. Dupre testified that he was present at the sale of the property and that he purchased it for the said securities company when it was offered by Mr. Dore as auctioneer. Mr. Lucius F. Castile testified that he was present at the sale, heard Mr. Dore auction the property at the residence of the late Arsene Fruge in the town of Mamou, in the parish of Evangeline, where the property is situated, and that Mr. Dupre purchased it for his company. Mr. O. L. Fuselier testified that, while he was not present at the sale, he met several persons coming from the house

after the sale and that he knew there was a sale.

The circumstances confirming the testimony of these witnesses that the property was actually sold at public auction are these: On November 21, 1927, about ten months after the succession sale is said to have taken place, the Opelousas-St. Landry Securities Company, which concern, according to the testimony of Mr. Dore, Mr. Dupre, and Mr. Castile, purchased the property, sold it under full warranty of title to O. L. Fuselier. The sale was made on credit and the deed reserving the vendor's lien and privilege was recorded in both the conveyance and mortgage records of the parish. Fuselier defaulted on his payments and the vendor foreclosed and became the purchaser at the foreclosure sale on March 16, 1929. On August 29 of the same year the Opelousas-St. Landry Securities Company sold the property under full warranty of title to these defendants. It seems highly improbable that the securities company would twice have sold the land under full warranty if it had not in fact purchased it.

Another circumstance which indicates that the property was sold and that these plaintiffs were aware of that fact is that immediately following the date on which the property is said to have been sold, the plaintiffs abandoned it when the crop of 1926 was harvested and never thereafter made any claim to it until a short time previous to the filing of this suit in May, 1934, and not then, apparently, until after their attention had been called to the fact that the succession records had all been lost or destroyed and that there was no record evidence of the sale until the

execution of the procès verbal thereof in January, 1934.

Going back further we find in the record a writ of sale issued by the clerk of court, addressed to Adio Fruge, administrator, authorizing and empowering him to sell at public auction all the effects of the succession "composed of the movables and immovables of the estate of Arsene Fruge, being No. 658, Probate Docket, 13th Judicial District Court, Evangeline Parish, Louisiana, upon the following terms and conditions; cash on the day of sale."

The writ recites that it was issued by virtue of an order of the honorable Thirteenth judicial district court in and for the parish of Evangeline, La., granted by Hon. B. H. Pavy, judge of said court. This writ is dated November 5, 1926. The record discloses that the property here involved, as well as all other property of the succession, was advertised for sale in the Weekly Gazette, published at Ville Platte, La., the parish seat of Evangeline parish, on November 26, 1926; the sale to take place on December 11 of that year. This advertisement appeared in each issue of that weekly newspaper between November 6 and December 11. The notice of sale is signed by Adio Fruge, administrator, and recites that the sale was to be made "by virtue of an order of the Honorable B. H. Pavy, Judge of the 13th Judicial District Court of the State of Louisiana, for the Parish of Evangeline, and of the date of November 5, 1926, and in conformity with the commission of the same date issued to me by L. Demoruelle, deputy clerk of the said Court."

Apparently the tract of land here involved was not sold on December 11, because we find

in the record that the advertisement was continued in said weekly newspaper until January 22, 1927. The only property mentioned in the advertisements appearing subsequently to December 11, 1926, is the property here involved. We assume therefore that the other property of the succession, both real and personal, was sold on December 11.

■ The testimony of the three witnesses and all the circumstances surrounding the case make it perfectly clear that the property here involved was actually sold at public auction by the administrator of the succession of Arsene Fruge ,and that defendants' author in title became the purchaser thereof. Therefore if the procès verbal of the sale. signed by Adio Fruge, administrator, in January, 1934, be disregarded entirely, it is nevertheless true that title passed from the succession to the Opelousas-St. Landry Securities Company by the adjudication, which was proved by parol testimony.

In the case of Landry v. Laplos, 113 La. 697, 37 So. 606, it was held that in succession sales, "the adjudication is of itself, and before anything else is done, the completion of the sale; and that either party has a right of action to compel the other to carry out the contract," citing a long list of cases. It was further held that when there is no record evidence of such sales in the way of a procès verbal signed by the administrator to show that the adjudication was made, parol testimony is admissible to show that the adjudication was made.

■ Under the showing here made, the Opelousas-St. Landry Securities Company was vested with title to the property on the day it was adjudicated, and even though the ad-

judication was not followed up and confirmed in due course by formal act executed and signed by the administrator, the purchaser had a right of action to compel the administrator to execute these papers, and that right of action exists now in favor of the defendants. The reason that no action was brought to compel the administrator to confirm the sale was due no doubt to the fact that it was not discovered that this informality existed until 1934, seven years after the sale, when attorneys for defendants discovered it. It was then that the administrator was asked to execute the document which he failed to execute immediately following the adjudication. The administrator promptly complied. But if he had refused, under the holding in Landry v. Laplos, supra, the defendants had the right, in defense of the petitory action brought against them, to set up the title acquired by their authors at the adjudication and to prove the adjudication by parol testimony, and this they did.

It is not contended by plaintiffs, nor even suggested, that the defendants or their author were guilty of any fraud or bad faith, nor do they suggest any reason why this property should not have been sold along with the other succession effects; it being shown that the succession was insolvent.

Counsel for plaintiffs, in oral argument and in briefs, set up the following irregularities which they contend strike the adjudication with nullity: First, that Adio Fruge was a minor at the time he was appointed and qualified as administrator; second, that there was no order of court authorizing the sale of any of the property; third, that the property was not appraised; and, fourth, that the

heirs were recognized and put in possession by an order of court prior to the date on which the administrator was appointed.

■ It is true that Adio Fruge was under the age of 21 years when he was appointed administrator. The fact that he was a minor afforded a good reason why he should not have been appointed. But even if the appointment was illegal for that reason, the acts of administration performed by him were not necessarily void. Rizotto v. Grima, 164 La. 1, 113 So. 658.

■■ As we have said, the succession papers have all been lost or destroyed, and for that reason no one has been able to find an order of court authorizing a sale of this property and, as suggested by counsel for plaintiffs, a sale of succession property without an order of court authorizing it is a nullity. No citation of authority is necessary to support that proposition. But judicial proceedings are presumed to be legal until the contrary be shown. The principle omnia rite acta is applicable here. See Gibson v. Foster, 2 La. Ann. 503; Gentile, Administrator, v. Foley, 3 La. Ann. 146; Thibodaux v. Barrow, 129 La. 401, 56 So. 339; Hibernia Bank & Trust Co. v. Whitney Bank, 130 La. 817, 58 So. 583; Hamburger v. Purcell, 139 La. 456, and authorities cited at page 464, 71 So. 765.

■ As already stated, the writ of sale issued by the clerk of court, and all the advertisements recite that the sale was made pursuant to an order granted by the judge. These recitals do not prove, of course, that an order was granted for the sale of the property. But from the fact of these recitals, the fact that a sale of the property was nec-

essary to pay debts, the fact that the property was actually sold, and the further fact that Mr. Dore, attorney for the administrator, testified that he made application to the court for such order, we presume under the rule omnia rite acta that such an order was in fact granted. The same rule applies to the third objection made, and that is that the property was not appraised. However, there is some proof in the record that the property was appraised. On page 52 of the record we find a notice of the application for administration was published in the Weekly Gazette. That notice is headed "Estate of Arsene Fruge, No. 658, Probate Docket, 13th Judicial District Court, Parish of Evangeline, State of Louisiana." The notice is to all whom it may concern, "To show cause, within ten days, why the prayer of said petitioner (to be appointed administrator) should not be granted and why the description and valuation of said estate should not be approved and homologated."

On page 40 of the record there is copied a minute entry under the heading of "Estate of Arsene Fruge," as follows: "Judgment sending heirs in possession." That minute entry is dated June 7, 1926. The application of Adio Fruge to be appointed administrator seems to have been made on October 21 of that year, a date subsequent to that of the minute entry referring to the sending of the heirs into possession.

■ The minute entry with reference to sending heirs in possession makes no mention of the particular heirs referred to. Evidently the parties ignored this proceeding, if it was intended to send the heirs into possession of the succession of their deceased

father, because all of them except one were minors at the time, the succession was insolvent, and there is no indication that the heirs accepted the succession with benefit of inventory. This bare minute entry is not sufficient to show that these plaintiffs were recognized as the heirs of Arsene Fruge, especially in view of the fact that one of them later on was appointed and qualified as administrator.

For the reasons assigned the judgment appealed from is affirmed.