(43 South. 397.)

No. 16,310.

CHAFFE et al. v. MINDEN LUMBER CO.

(March 4, 1907. Rehearing Denied April 1, 1907.)

1. PARTITION — SALE — CONVEYANCE TO PURCHASER — CONSTRUCTION — PROPERTY CONVEYED.

Where, from all the circumstances of the case, it is evident that the intention was to sell the entire real estate of the succession, the whole will be held to have been conveyed, although the sheriff, in describing the land according to the maps of the government surveys, has omitted a part.

2. SAME.

More especially will this be held where the procès verbal of the sale shows that the whole was sold. It is the adjudication, and not the sheriff's deed, that conveys the ownership.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASERS.

The fraud by which an administrator buys through a person interposed the property of the succession under his administration cannot affect a third person, who without notice of such fraud buys the property in good faith from such interposed person or his vendee; and this, even though the vendee be the administrator himself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 583–600.]

(Syllabus by the Court.)

Appeal from Second Judicial District Court, Parish of Webster; John Nicholls Sandlin, Judge ad hoc.

Action by C. C. Chaffe, guardian, and others, against the Minden Lumber Company. From the judgment, an appeal is taken. Reversed in part, and affirmed in part.

John L. Little, Stewart & Stewart, and Wise, Randolph & Renrall, for appellant. Lynn Kyle Watkins, for appellees.

PROVOSTY, J. This is a petitory action. Both parties claim title from J. T. Morrow and his wife; the plaintiffs by inheritance, and the defendant by mesne conveyances. Morrow died in 1852. He was survived by his wife and seven minor children. One of these children and the daughter of another have brought this suit. Four have died without issue and intestate, and the heirs of the seventh have declined to join in this suit.

In 1855, Mahala Morrow, the eldest daughter, who by marriage to J. D. Watkins had become emancipated (it is her heirs, by the way, who have declined to join in the suit), instituted a suit against her coheirs and her mother, asking that the property of the succession be sold and partitioned, and in the course of this suit the property was accordingly sold and partitioned. The intention was to sell and partition the whole of the property of the succession. Of this there can be no doubt. The prayer of the petition was that the whole be sold; the order directing the sale to be made was for the whole; the commission to the sheriff was for the whole; and, finally, the procès verbal of the sale showed that the whole had been sold. Nay, even the deed executed by the sheriff in favor of the adjudicatee showed it, since it called for an acreage of 718 acres, which was the total acreage. But in his deed the sheriff, instead of describing the land as it had been described in the inventory, described it by the maps of the government surveys, and in doing so left out the N. E. ¼ of the S. W. ¼ of section 21, containing 40 acres.

This omission has led plaintiff to contend that the title of the succession of Morrow to an undivided half of this 40 acres has never been divested.

Plaintiffs also claim that, because of the nonobservance of the forms prescribed by law the entire sale was void.

First, as to the effect of the omission. In the inventory, and in the procès verbal of sale, one of the properties, called the "town property," is said to contain 118 acres, and another property, called the "plantation," is said to contain 600 acres. The order and the commission were for the sale of both properties, and the procès verbal shows that

both were sold. The sheriff's deed shows that the acreage of the property sold was 718 acres; that is to say, the total acreage of both properties. Now, if this 40 acres were taken away, there would be 678 acres only, and only a part of the property of the succession would have been sold. Clearly, therefore, the failure to mention this sixteenth of a section or 40 acres, in the sheriff's deed, was purely an oversight.

Another circumstance strongly indicating that this 40 acres was sold with the rest is the fact that it was the connecting link between the two properties, and that it had been theretofore, and continued thereafter to be, treated as part of the property.

Sheriff's deeds may always be corrected. Even parol evidence is admissible for that purpose. Harvey v. Gulf State, etc., 108 La. 550, 32 South. 475, and cases there cited. Besides, it is the adjudication, as shown by the procès verbal, which confers title, and not the sheriff's deed. Succession of Massey, 46 La. Ann. 130, 15 South. 6, and cases there cited. As already stated, the procès verbal of the adjudication, in this case, calls for the whole property. Hence we conclude that this 40 acres was sold along with the rest of the property.

The informalities complained of as avoiding the sale are that the order for the sale was made before judgment had been rendered in the partition suit, and that, so far as the record shows, the sale was made at nobody's instance.

The facts are as follows: Special tutors had been appointed to represent the minors in the partition suit, as is required to be done where there are several minors with the same tutor and undertutor. J. D. Watkins, the husband of the plaintiff in the partition suit, was the undertutor of the minors, and the mother of the minors was their tutrix. The special tutors filed an answer for the minors. In this answer they joined in the prayer for a sale and partition. The court thereupon ordered a family meeting to be held to fix the terms and conditions of the sale of the interest of the minors, and on the recommendations of this family meeting, after its proceedings had been duly homologated, made an order for the sale; and the sale was accordingly made. Its date was January 6, 1855. Later, in January, 1856, judgment was regularly rendered in the suit, approving the sale which had been made, fixing the interest of the different parties, ordering a partition, and referring the matter to a notary for making the partition.

The Code (article 345) authorizes the property of minors to be sold in "the case of a licitation at the suit of a coheir"; but, before a licitation can be ordered, the court has to determine that the property cannot conveniently be divided in kind. Civ. Code, art. 1339. Therefore we are inclined to believe that the sale should not have preceded the judgment. But this putting the cart before the horse amounts, in the end, to nothing more than to an irregularity, curable by the prescription of five years, as applicable to irregularities in judicial sales and partitions (Civ. Code, art. 3542); and that prescription is pleaded by defendant. Indeed, it is not clear that the irregularity was not cured by the judgment itself, which approved the sale. By approving the sale, the judgment, in effect, decreed that the property could not conveniently be divided in kind.

The purchaser at the partition sale was J. T. Morrow's widow. By a second marriage she had become Mrs. Leverett. Some years later by a third marriage she became Mrs. Mooring. She held the property over 30 years, until her death in 1884. At her succession sale two years later, in 1886, it was adjudicated to Edgar Goodwill. This purchaser was the son of the administrator of her succession; and it is now claimed by plaintiffs that he was merely a person interposed for

the administrator, who was the real purchaser, and that the sale was for that reason null, and that the property has never ceased to belong to her succession.

The trial court found that Edgar Goodwill had purchased for himself, and not for his father. While we have read the evidence, we have not done so with a view to passing on this question, since the defendant, who bought the property in good faith from the assigns of Edgar Goodwill, could not be affected by any secret understanding between him and his father by which he might have been purchasing for his father and not for himself. After four years, in 1890, Edgar Goodwill sold the property to his father; and the defendant, shortly afterwards, in perfect good faith, without notice of the alleged fraud, purchased from the father. Under these circumstances the defendant is protected. Delacroix v. Lacaze, 14 La. Ann. 519; Brian v. Bonvillain, 52 La. Ann. 1794, 28 South. 261; Ford v. Mills, 46 La. Ann. 331, 14 South. 845; Fletcher v. Peck, 6 Cranch (U. S.) 87, 3 L. Ed. 162; Snoddy v. Brashear, 3 La. Ann. 569; Harris v. Harris, 109 La. 913, 33 South. 918; Blanchard v. Castille, 19 La. 362; Broussard v. Broussard, 45 La. Ann. 1085, 13 South. 699; Thompson v. Whitbeck, 47 La. Ann. 49, 16 South. 570; Chaffe v. Oliver, 33 La. Ann. 1008.

The lower court gave plaintiffs judgment for $2^3/_{916}$ of the 40 acres, on the theory that the 40 acres had not passed by the partition sale. In that sole respect the judgment is erroneous.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside in so far as in favor of plaintiffs, and be otherwise affirmed, and that the plaintiffs' suit be dismissed, with costs in both courts.

LAND, J., takes no part, not having heard the argument.